UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NORTH CENTRAL STATES
REGIONAL COUNCIL OF
CARPENTERS,

        Plaintiff,

v.                                Case No. 08-C-525

FRED J. PIETTE CO. INC.,

        Defendant.

**DECISION AND ORDER**

North Central States Regional Council of Carpenters ("the Union") commenced this action to enforce its rights under a series of agreements with Fred J. Piette Co., Inc, a contractor that constructs and remodels small businesses. The Union claims that Piette has refused to meet its obligations under a Settlement Agreement the parties entered into to resolve a grievance filed by the Union under the 2007 Working Agreement between the parties. The Union also claims that Piette has refused to arbitrate a grievance filed under the 2008 Working Agreement in violation of that agreement. Both agreements constitute contracts between "an employer and a labor organization in an industry affecting commerce" under Section 301 of the Labor Management Relations Act, (LMRA), 29 U.S.C. § 185, under which this Court's jurisdiction arises. Presently before the Court is Piette's motion to dismiss in which it asserts it was not bound by any bargaining agreement, and thus federal jurisdiction is lacking. The Union has filed its own motion for

summary judgment asserting the opposite. For the reasons given herein, the Union's motion will be granted and Piette's denied.

The issue central to both motions is relatively straightforward: was Piette bound by a collective bargaining agreement during the time when the grievances at issue arose? If so, the Union is entitled to compel arbitration under that agreement and to enforce a settlement agreement entered into in a previous grievance. If not, this Court lacks jurisdiction. This Court's dismissal of Piette's counterclaims in a previous decision (Dkt. # 64) has undermined much of Piette's defense, but I will address its remaining arguments below.

Piette is a small, family-owned contractor. There is no dispute that Piette entered into collective bargaining agreements covering the period 1993-1996 (and earlier). For example, on October 4, 1993, Fred Piette, Sr., then the company's owner, signed an agreement adopting and agreeing to the 1993-1996 collective bargaining agreement entered into between the Wisconsin Chapter of the Associated General Contractors of America and the Greater Fox River Valley District Council of the United Brotherhood of Carpenters and Joiners of America. (Dkt. # 41, Ex. A at 49-50.)

Piette asserts, however, that after that agreement lapsed it never signed another bargaining agreement with the Union. It claims there are no records of any such signed agreements for periods after 1996, and because the dispute in this case arose around 2007 and after, there is no governing CBA.[1] Accordingly, it believes this Court lacks jurisdiction over the dispute.

---

[1]The merits of the dispute are not at issue presently, but they involve the Union's allegation that Piette was employing or subcontracting with non-union employees to perform bargaining-unit work.

2

Case 2:08-cv-00525-WCG   Filed 06/17/09   Page 2 of 5   Document 65

The Union's position is quite simple. Contained within the 1993-1996 agreement is an evergreen clause. Just as Piette had essentially delegated bargaining authority to the Associated General Contractors ("AGC") for the 1993-96 agreement, it delegated *future* bargaining authority to that organization as well. Section 3.4 of that agreement states in relevant part:

> Individual employers . . . shall, by becoming party to this Master Agreement, also become part of said multi-employer bargaining unit, and said individual employer authorizes the Wisconsin Chapter, AGC, to negotiate successor Master Agreements on its behalf and said individual employer specifically adopts all provisions of any successive Master Agreement entered into between Wisconsin Chapter, AGC, and the Union. Withdrawal from the multi-employer bargaining unit may be accomplished only by written notice to the Union and to the Association, at least ninety (90), but no more than one hundred twenty (120) days prior to the date of expiration of this Agreement or any renewal period thereof.

(Dkt. # 41, Ex. A at 3-4.)

Thus, when Piette signed on to that Master Agreement, it was agreeing that it would be party to any subsequent Master Agreements negotiated by the AGC unless it gave written notice that it was opting out. There is no evidence that Piette ever gave such notice.

As the Union points out, such clauses are hardly novel, and in fact they are quite common. The Eighth Circuit had occasion to enforce a similar clause whereby the contractor delegated bargaining rights to the local chapter of the National Electrical Contractors Association ("NECA"):

> Our conclusion that the Letter of Assent-A provides a continuous delegation of Grimm Electric's bargaining rights until proper termination is based on the wording of that document. In particular, our judgment rests on a reading of the last sentence of the Letter of Assent-A, the so-called evergreen clause: "It [the employer's delegation of bargaining authority] shall remain in effect until terminated by the undersigned employer giving written notice to [NECA] and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the aforementioned approved labor agreement (emphasis added)." We think it clear from these words that the employer's assignment of bargaining authority under the Letter of Assent-A is an ongoing delegation, ending only on formal termination. Were this delegation of authority to end concomitantly with the collective bargaining

3

> agreement in effect at the time of execution of the Letter of Assent-A, no need would exist for such a termination provision.

*Local 257, Intern. Broth. of Elec. Workers, AFL-CIO v. Grimm,* 786 F.2d 342, 345 (8th Cir. 1986).

The same holds true here. The fact that there were no "signed" copies of future agreements is wholly unsurprising given that Piette had already delegated to another entity the right to bind it. Similarly, the fact that Piette claims it has no bargaining unit employees is beside the point. In fact, that is the very dispute that the Union wants to arbitrate – it claims either that Piette *does* have bargaining unit employees (despite calling them subcontractors) or that, if Piette does legitimately work with subcontractors, then it is evading the bargaining agreement's requirement that it subcontract only with those who are signatories to an agreement with the Northern Wisconsin Regional Council of Carpenters. Either way, Piette's claim that it does not have bargaining unit employees does not somehow mean it is relieved of the burdens of the controlling bargaining agreement. Otherwise, compliance with such agreements would be wholly within the whim of the employer and the agreements would essentially be meaningless. There is a dispute here between the Union and the employer, and the employer is bound to an agreement that indisputably contains an arbitration provision. (Summers Aff., Ex. C at 5.) Accordingly, Piette will be compelled to arbitrate the dispute set forth in Count 2 of the Amended Complaint pursuant to the terms of the governing bargaining agreement.

The Union also seeks enforcement of an earlier settlement agreement. The Union filed a grievance in 2007, and the parties appeared before an arbitrator. During the arbitration hearing the parties agreed to a settlement, and that agreement is set forth in Exhibit A to the Amended Complaint. In short, Piette agreed to pay $60,000 to the Union for the benefit of certain employees.

4

It also agreed to produce a list of projects it had commenced prior to April 9, 2008. (Am. Compl., Ex. A-C.)

Piette does not have a specific objection to the settlement described above, except that it repeats its assertion that it wasn't bound by a bargaining agreement (which begs the question of why it went to arbitration and entered into a settlement in the first place). As found above, however, Piette was in fact still bound to the successive bargaining agreements. Accordingly, the Union is entitled to the relief it achieved in the arbitration proceeding.

In sum, Piette's motion to dismiss is denied, and the Union's motion for summary judgment is granted. Piette is ordered to comply with the settlement agreement it entered into, as set forth in the exhibits to the Amended Complaint. Pursuant to the Settlement Agreement, Piette is ordered to make payments to the designated employees totaling $60,000, plus accrued interest, and provide the Union with a list of projects commenced prior to April 9, 2008. Piette is further ordered to engage in arbitration of the grievance set forth in Count 2 of the Amended Complaint pursuant to the terms of the governing bargaining agreement's arbitration clause. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this 17th day of June, 2009.

s/ William C. Griesbach
WILLIAM C. GRIESBACH
United States District Judge